IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MAIDEN BIOSCIENCES, INC., § § Plaintiff, § § Civil No. 3:18-CV-1354-D VS. § § MPM MEDICAL, INC., et al., § § Defendants. § | |

MAIDEN BIOSCIENCES, INC., §
§
          Plaintiff, §
§ Civil No. 3:18-CV-1354-D
VS. §
§
MPM MEDICAL, INC., et al., §
§
          Defendants. §

MEMORANDUM OPINION
AND ORDER

In this action, plaintiff Maiden Biosciences, Inc. ("Maiden") moves to strike the November 20, 2018 original answer to plaintiff's second original complaint and the December 11, 2018 first amended answer to plaintiff's second original complaint and original counterclaim of defendants MPM Medical, Inc. ("MPM") and RBC Life Sciences, Inc. ("RBC"), or, in the alternative, to extend the pretrial deadlines. MPM and RBC oppose the motion to strike (they do not oppose the alternative motion to extend the pretrial deadlines), and they move in the alternative to modify the scheduling order so that, in effect, they may file their counterclaim. For the reasons that follow, the court grants the alternative motion of MPM and RBC to modify the scheduling order so that the counterclaim may be filed, it enlarges the scheduling order deadlines substantially as Maiden requests, and it denies the balance of the motions.

I

Maiden is a manufacturer of wound dressings. It filed this lawsuit against MPM and RBC on October 16, 2017 in the United States District Court for the District of Maryland. Maiden alleges that MPM and RBC, who are distributors of healthcare products, breached their contract with Maiden and were unjustly enriched by such action. Maiden amended its complaint in December 2017. On May 29, 2018 the District of Maryland granted defendants' motion to transfer and transferred the case to this court under 28 U.S.C. § 1404(a). Following the transfer, defendants filed their answer on July 14, 2018. The answer did not include a counterclaim. On July 16, 2018 the court entered the scheduling order ("Scheduling Order"), which provides, *inter alia*, that "[a] party must file a motion for leave to amend pleadings no later than November 1, 2018."

On November 1, 2018 Maiden filed an unopposed motion for leave to file a second amended complaint, which the court granted, and the second amended complaint was filed the same day. MPM and RBC answered the second amended complaint on November 20, 2018—five days late. The answer did not include a counterclaim.

On December 11, 2018 MPM and RBC filed a first amended answer to plaintiff's seconded amended complaint and original counterclaim, asserting, for the first time, a counterclaim.[1]

---

[1]The counterclaim includes claims for breach of contract, fraud by nondisclosure, misappropriation of trade secrets, conversion and civil theft, interference with an actual or prospective business relationship, money had and received, unjust enrichment, and promissory estoppel.

On December 21, 2018 Maiden filed the instant motion to strike defendants' answer and amended answer as untimely, or, alternatively, to extend pretrial deadlines.[2] MPM and RBC object to the motion to strike, contending that their answers and counterclaim are timely, but they do not oppose Maiden's alternative motion to extend the pretrial deadlines. MPM and RBC move in the alternative for a modification of the Scheduling Order to allow Maiden and defendants to file claims for affirmative relief, which would effectively enable them to file their counterclaim.

II

The court turns first to defendants' contention that their answers and counterclaim are timely.

Maiden filed and served[3] its second amended complaint on November 1, 2018. Defendants filed their answer to Maiden's second amended complaint on November 20, 2018. But that answer was untimely: it should have been filed no later than November 15, 2018. *See* Fed. R. Civ. P. 15(a)(3).

Defendants did not file their counterclaim until December 11, 2018, when they filed an amended answer to the second amended complaint and original counterclaim. Defendants assert that a counterclaim may be filed within 21 days after the claimant's last pleading. The court will assume that defendants are relying on Rule 15(a)(1)(A) for this proposition, which

---

[2]Maiden answered the counterclaim on December 31, 2018.

[3]Service occurred under the court's electronic case filing system.

allows a party to amend its pleading once as a matter of course within 21 days after serving it. But while the filing date of the December 11, 2018 amended answer and counterclaim falls within 21 days of November 20, 2018—the date defendants filed their answer to the second amended complaint—it falls more than 21 days after the date defendants' answer was due, i.e., more than 21 days after November 15, 2018. Defendants have not established that they can invoke Rule 15(a)(1)(A) to amend an answer as a matter of course that was itself untimely and subject to being stricken on that basis. Because the November 20, 2018 answer was untimely, the December 11, 2018 amended answer purporting to amend the November 20, 2018 answer is likewise untimely.

Defendants also posit that Rule 13 allows 30 days to file a counterclaim after the answer is due. But they do not specify which provision of Rule 13 confers such a period.

The court therefore holds that defendants' answers and counterclaim are untimely. Accordingly, it was necessary for defendants to seek leave to file the amended pleadings; they could not file them as of right. And because the deadline for seeking leave to amend the pleadings had already expired under the Scheduling Order, it was also necessary for defendants to move to amend the Scheduling Order to allow a motion for leave to amend to be timely filed. Defendants seek this by way of an alternative motion to modify the Scheduling Order, and it is to this alternative motion that the court turns next.

### III

When, as here, a motion for leave to amend the pleadings is filed after the deadline for seeking leave to amend has expired, the court must first determine whether to modify the

scheduling order under the good cause standard of Rule 16(b)(4) to extend that deadline. *See, e.g., S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.).

A

Rule 16(b)(3)(A) provides that the court's "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." To meet the good cause standard, the moving party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted) (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir.1997)). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order."

*Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movant is insufficient to constitute "good cause." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 248523, at *2 (N.D. Tex. Jan. 26, 2011) (Fitzwater, C.J.). Instead, the movant must show that, despite its diligence, it could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

B

1

The court turns first to MPM and RBC's explanation for failing to timely amend their pleadings and for failing to move for leave to amend.

Defendants argue that the claims asserted in their counterclaim were not yet mature and could not have been pleaded "in good conscience" until after the deadline set forth in the Scheduling Order. They contend that these claims were mature as to liability but that damages continued to accrue. The court rejects defendants' argument.

The claims that MPM and RBC assert against Maiden accrued prior to the Scheduling Order deadline. Defendants admit the event on which all of their claims are based was RBC's "negotiations with a certain company for the purchase of RBC's interest in the assets of MPM," which occurred during "the summer of 2017." Ds. 1st Am. Answer & Countercl.

¶ 31. In most instances, a cause of action accrues in Texas[4] "when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Stanissis v. DynCorp Int'l LLC*, 2017 WL 3279148, at *7 (N.D. Tex. Aug. 2, 2017) (Fitzwater, J.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).[5] Under Texas law, defendants' causes of action could have accrued at the latest in the summer of 2017. This is because MPM and RBC first received summonses in this case on October 16, 2017, and the deadline to move for leave to amend

---

[4]The Supply Agreement between the parties states that the "Agreement shall be governed by and construed in accordance with the laws of the State of Texas." Am. Compl., Ex. 4, ¶ 12.5. The court therefore assumes *arguendo* that Texas law governs the stated causes of action. *See Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2018 WL 2416071, at *5–6 (D. Md. May 29, 2018) (addressing motion to transfer under 28 U.S.C. § 1404(a)).

[5]In their claims, defendants primarily allege breach of contract, fraud by nondisclosure, misappropriation of trade secrets, conversion and civil theft, and interference with an actual or prospective business relationship. A cause of action for breach of contract accrues when the contract is breached. *See TIB–The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F.Supp.3d 661, 668 (N.D. Tex. 2014) (Fitzwater, C.J.) (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). A cause of action for fraud generally accrues "when the fraud is perpetrated." *Rosenberg v. Citibank Texas, N.A.*, 2013 WL 12123244, at *3 (N.D. Tex. Dec. 27, 2013) (Robinson, J.) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988)). A cause of action for misappropriation of trade secrets accrues when "the trade secret is actually used." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (emphasis omitted) (citing *Comput. Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). A cause of action for conversion accrues "at the time of the unlawful taking." *Ortega v. Young Again Prods., Inc.*, 548 Fed. Appx. 108, 112 (5th Cir. 2013) (internal quotation marks omitted) (citing *Pipes v. Hemingway*, 358 S.W.3d 438, 450 (Tex. App. 2012, no pet.)). And a cause of action for interference with an actual or prospective business relationship accrues when "existing negotiations, which are reasonably certain of resulting in a contract, are interfered with such that the negotiations terminate and harm to the plaintiff results." *Miller v. Am. Int'l Grp., Inc.*, 2005 WL 1131110, at *7 (N.D. Tex. May 9, 2005) (Solis, J.) (citing *Hill v. Heritage Res.*, 964 S.W.2d 89, 116 (Tex. App. 1997, pet. denied)).

pleadings was November 1, 2018. This allowed defendants more than one year to assert these claims as of right or by moving for leave to amend. Moreover, defendants inadequately explain what caused the delay in calculating damages, or, alternatively, why they were precluded from asserting the claims without precise damages calculations in the first place.

MPM and RBC provide no explanation for why they were unable to seek leave to amend before the deadline. Their brief does not address these changes, focusing only on the timeliness of their answers and counterclaim. The record indicates that, at the time defendants filed their answer, they were aware of the facts on which they now rely to support their motion to amend: the alleged poaching of MPM's Primary Collagen Purchaser and the resulting financial repercussion for defendants. Therefore, with no plausible explanation for the delay, this factor favors denying modification of the Scheduling Order.

2

Under the second factor, the court considers the importance of the amendment. Although defendants do not address this factor, the court concludes that permitting MPM and RBC to assert their counterclaim is important because the claims may be compulsory counterclaims that would be barred if not asserted. *See, e.g.*, *Cline v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 4041791, at *8 (N.D. Tex. July 2, 2015) (Fitzwater, J.). Therefore, this factor weighs in favor of granting the alternative motion to modify the Scheduling Order.

3

The court considers together the third and fourth factors—the potential prejudice to defendants and the availability of a continuance. *See, e.g., Maynard v. PayPal, Inc.*, 2018

WL 5776268, at *5 (N.D. Tex. Nov. 2, 2018) (Fitzwater, J.). MPM and RBC maintain that Maiden would not be prejudiced because it has been aware of the operative liability facts from the beginning of the case.

Maiden does not argue prejudice would result if the motion were granted. And even if there were prejudice to Maiden, such prejudice can be cured by appropriate modifications to the Scheduling Order or by a continuance because the litigation is still at an early stage and the trial date has not been set.[6] Moreover, Maiden requests in the alternative to its motion to strike that the court extend the pretrial deadlines if the court does not strike the answers and counterclaim.[7] Considering Maiden's own alternative request for an extension together with the likely absence of prejudice and the availability of remedies for any resulting prejudice, the third and fourth factors weigh in favor of granting the motion to modify the Scheduling Order.

4

The Rule 16(b)(4) analysis is holistic. The court "does not mechanically count the number of factors that favor each side. And it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater,

---

[6]Given that the deadline for discovery is still roughly three months away, a continuance might not even be necessary. *See Kouzbari v. Health Acquisition Co.,* 2018 WL 6514766, at *4 (N.D. Tex. Dec. 11, 2018) (Fitzwater, J.).

[7]Maiden reaffirms in its reply brief that it does not oppose the request for an extension.

C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012). Although defendants have not offered an adequate explanation for their failure to timely move for leave to amend, the court concludes that the importance of their amendment and the availability of remedies to cure any resulting prejudice favors amending the Scheduling Order. The court therefore concludes, after weighing all of the relevant factors, that MPM and RBC have shown good cause to amend the Scheduling Order to allow them to move for leave to file their counterclaim.

IV

Having found good cause to amend the scheduling order, the court now turns to the question whether leave to amend should be granted under Rule 15(a).

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (internal quotation marks omitted) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). In deciding whether to grant leave to amend, the court may consider factors such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing cases). Nevertheless, Rule 15(a) and the other federal rules "reject the approach that pleading is a game of skill in

which one misstep by counsel may be decisive to the outcome." *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007)); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1471, at 587 (2010) (footnote omitted) (stating that a primary purpose of Rule 15 is to allow the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities").

Having considered the parties' positions, the court is not persuaded that it should vary in this case from Rule 15(a)(2)'s admonition that leave to amend should freely be given when justice so requires. Maiden does not argue that there was any bad faith or dilatory motive on the part of MPM and RBC, that they repeatedly failed to cure deficiencies by amendments previously allowed, that an amendment would unduly delay the case, or that amendment would be futile. And the court concludes, based on the reasons stated above, that permitting MPM and RBC to amend would not cause any unfair prejudice to Maiden. Accordingly, the court grants MPM and RBC leave to amend under the Rule 15(a)(2) standard to file their counterclaim. The counterclaim filed on December 11, 2018 shall be deemed filed today, which shall be the date that controls when an answer to the counterclaim is due.

V

Considering Maiden's unopposed request for an extension of no fewer than 120 days and the passage of time since the motions were filed, the court extends each deadline in the July 16, 2018 Scheduling Order for a period of 180 days. If the new deadline falls on a

Saturday, Sunday, legal holiday, or date on which the clerk's office is closed by direction of the court or is otherwise inaccessible, *see* Rule 6(a)(3), the deadline is the next day that is not one of the aforementioned days.

* * *

For the reasons explained, the court denies Maiden's December 21, 2018 motion to strike, or, in the alternative, motion to extend pretrial deadlines. The court grants the January 14, 2019 alternative motion of MPM and RBC to modify the Scheduling Order, and, having modified the Scheduling Order, grants them leave to file their counterclaim.

**SO ORDERED**.

February 26, 2019.

SIDNEY A. FITZWATER
SENIOR JUDGE