IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAIDEN BIOSCIENCES, INC., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | Civil Action No. 3:18-CV-1354-D |
| VS. | § | |
| | § | |
| MPM MEDICAL, INC., et al., | § | |
| | § | |
| Defendants-Third-Party | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| DANIEL ZANG, et al., | § | |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this breach of contract action, third-party defendants Daniel Zang ("Zang") and

Mark Gorman ("Gorman"), officers of Maiden Biosciences, Inc. ("Maiden"), move under

Fed. R. Civ. P. 12(b)(2) to dismiss the claims of defendants-third-party plaintiffs MPM

Medical, Inc. ("MPM") and RBC Life Sciences, Inc. ("RBC") for lack of personal

jurisdiction. MPM and RBC oppose the motions and seek leave to amend their third-party

complaint. For the reasons that follow, the court grants Zang's and Gorman's motions to

dismiss, denies MPM and RBC's request for leave to amend, and dismisses the third-party

actions of MPM and RBC against Zang and Gorman without prejudice by Rule 54(b) final

judgment.

This case is the subject of several prior memorandum opinions and orders. *See Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2019 WL 2075585, at *1 (N.D. Tex. May 10, 2019) (Fitzwater, J.); *Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2019 WL 935478, at *1 (N.D. Tex. Feb. 26, 2019) (Fitzwater, J.); *Maiden Biosciences, Inc. v. MPM Med., Inc.*, 2018 WL 2416071, at *1 (D. Md. May 29, 2018). The court will therefore recount only the background facts and procedural history that are pertinent to this decision.

Plaintiff Maiden, a Maryland corporation, is a biotechnology company that manufactures wound dressing. Maiden and MPM, a Texas corporation and wholly-owned subsidiary of RBC that distributes medical devices, entered into a supply agreement whereby MPM would purchase an annual minimum quantity of wound dressing and pay for a separate order of custom-made products. When MPM allegedly failed to uphold its end of the bargain, Maiden filed suit against MPM and RBC for breach of contract in the District of Maryland.

In their May 10, 2019 second amended answer to plaintiffs' second amended complaint and defendants' first amended counterclaim,[1] MPM and RBC allege that Gorman and Zang obtained MPM's trade secrets and used this information to poach MPM's Primary Collagen Purchaser ("PCP") by offering the PCP a much lower price than MPM charged.

---

[1]Although the title of this pleading does not refer to a third-party action, the caption of the pleading does refer to Zang and Gorman as third-party defendants, and it is in this pleading that MPM and RBC first assert third-party claims against Zang and Gorman.

MPM and RBC assert that MPM lost sales and a prospective asset purchase as a result. MPM and RBC assert counterclaims against Maiden, and third-party claims against Gorman and Zang, for misappropriation of trade secrets, under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836-1839, and the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001, *et seq.* (West 2019). MPM and RBC also assert claims for breach of fiduciary duties, conversion and civil theft, breach of contract, fraud, interference with actual or prospective business relationships, and promissory estoppel.

On July 1, 2019 and July 3, 2019, respectively, Zang and Gorman moved to dismiss these claims for lack of personal jurisdiction under Rule 12(b)(2). MPM and RBC did not respond to these motions. Instead, without leave of court, MPM and RBC filed on July 22, 2019 a second amended counterclaim and first amended third-party claim. This pleading was filed 59 days after Maiden and RBC filed their May 24, 2019 answer to defendants' amended counterclaim, 73 days after MPM and RBC filed their May 10, 2019 second amended answer to plaintiffs' second amended complaint and defendants' first amended counterclaim, and 83 days after the April 30, 2019 deadline for filing a motion for leave to amend pleadings set forth in the scheduling order, as amended. Then, on August 5, 2019, Zang and Gorman moved anew to dismiss for lack of personal jurisdiction, contending that the untimely filings and failures to respond provide independent bases to dismiss the claims against them. MPM and RBC have timely responded to the second round of Zang's and Gorman's dismissal motions filed on August 5, 2019, and in their response they request leave to amend their answer under Rule 15(a)(2). Maiden opposes the requests for leave to amend.

## II

As a preliminary matter, the court considers whether it should address the motions to dismiss filed on July 1 and July 3, 2019, the motions to dismiss filed on August 5, 2019, or all four. The court holds that it must consider the motions filed on July 1 and 3, but not the motions filed on August 5. This is because the August 5 motions address the July 22, 2019 second amended counterclaim and first amended third-party claim of MPM and RBC, which was improperly filed without leave of court and therefore can be disregarded. *See, e.g., Johnson v. Karr*, 2017 WL 2362043, at *1 (N.D. Tex. May 31, 2017) (Fitzwater, J.) (disregarding improperly-filed amended third-party complaint). This is also because the court decides below that the request of MPM and RBC for leave to amend should be denied. *See infra* § VI(B). Because the July 22, 2019 pleading can be disregarded and the court is denying the request of MPM and RBC for leave to amend, the court will only consider the motions to dismiss that are addressed to the May 10, 2019 second amended answer to plaintiffs' second amended complaint and defendants' first amended counterclaim, i.e., the first round of motions to dismiss filed on July 1 and July 3, 2019.

## III

The court now turns to the motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *D.J. Invs.,*

*Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over the defendant would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed [it]self of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that [it] "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's

interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (quoting *Mink*, 190 F.3d at 336).

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex.

Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion). Nor is the court limited to considering the facts pleaded in the complaint. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at *3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotation marks omitted).

## IV

The court considers first whether it may exercise personal jurisdiction over Gorman.

### A

Gorman contends that the court cannot exercise personal jurisdiction because he has insufficient contacts with Texas to render jurisdiction proper in this state. He avers in his declaration that he is a resident of Florida, holds a driver license and votes in Florida, owns no property in Texas, and has only been to Texas six times in the past ten years. Gorman posits that the court cannot exercise specific jurisdiction because MPM has not pleaded that his alleged conduct occurred in Texas or was directed at Texas. He maintains, for example, that MPM and RBC did not allege that the "poached" client is located in Texas or that Gorman was present in Texas when that alleged activity occurred.[2] As explained above,

---

[2]Gorman also avers that he did not sign the agreements at issue, invokes the fiduciary shield doctrine, and denies committing any tortious or injurious conduct toward MPM and

MPM and RBC filed an amended pleading on July 22, 2019 without court leave; they did not respond to Gorman's July 3, 2019 motion to dismiss.

B

1

Because MPM and RBC have not pleaded that Gorman's contacts with Texas are "continuous and systematic" or that he has *any* contacts with Texas beyond obtaining MPM's trade secrets, they have not made a prima facie showing that the court can exercise general jurisdiction. The court therefore focuses on whether MPM and RBC have established that Gorman has sufficient minimum contacts to support the exercise of specific personal jurisdiction.

2

The court likewise holds that MPM and RBC have not carried their burden of making a prima facie showing that Gorman has sufficient minimum contacts with the forum to support the exercise of specific jurisdiction. The minimum-contacts test for an intentional tort "differs from that [of a breach of] contract." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). For this reason, "[t]he proper focus of the minimum contacts inquiry in intentional-tort cases

RBC. Because the court is not relying on these assertions in deciding the motion to dismiss, it need not reach the merits of the related arguments.

- 8 -

is the relationship among the defendant, the forum, and the litigation." *Id.*

"When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction over the tortfeasor." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009) (footnote omitted); *see also Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction . . . if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."). But to the extent that "foreseeable effects of a tort" are alleged as a basis for personal jurisdiction, they "are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum" and are alone "not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citing *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753-54 (5th Cir. 1996)). In other words, the effect of a party's action alone is insufficient to confer specific jurisdiction absent some independent, affirmative act that both touches the forum state and "gives rise to the claim being asserted." *ThermoTek, Inc. v. WMI Enters.*, 2011 WL 1485421, at *4 (N.D. Tex. Apr. 19, 2011) (Fitzwater, C.J.).

MPM and RBC have failed to plead sufficient facts to establish that the court can exercise specific personal jurisdiction over Gorman. MPM and RBC allege that Gorman obtained confidential information about MPM's customers; he breached nondisclosure

agreements by using such information to poach an MPM client; and he harmed MPM by causing lost product sales and the loss of a prospective purchaser of MPM's assets. Notably, MPM and RBC do not allege how or where these actions occurred. They do not "show, for instance, that [Gorman's] alleged misuse of their trade secrets took place in Texas, or that [he] helped secure new customers or business for [MPM] in Texas, or that [his] conduct in any way had an effect on Texas residents outside of [MPM and RBC] themselves." *Leader's Inst., LLC v. Jackson*, 2015 WL 4508424, at *20 (N.D. Tex. July 24, 2015) (Boyle, J.).

Instead, MPM and RBC appear to rely as their sole basis for specific jurisdiction on the fact that MPM, as a Texas corporation, was damaged in Texas. Such an injury or effect, without allegations of specific acts directed toward the forum, is insufficient to establish the requisite minimum contacts for the court to exercise specific personal jurisdiction over Gorman. *See, e.g., ThermoTek, Inc.*, 2011 WL 1485421, at *3-4 (holding that plaintiff failed to make a prima facie showing that defendant engaged in out-of-state tortious conduct where the only contact alleged was "the injury [it] has suffered in Texas"); *see also Wheel-Source, Inc. v. Gullekson*, 2013 WL 944430, at *5 (N.D. Tex. Mar. 12, 2013) (Lynn, J.) (holding that there were insufficient contacts for the exercise of personal jurisdiction where "[t]he only alleged connections . . . are that [d]efendant allegedly received confidential and trade secret information sent from Texas, and that [d]efendant's conduct harmed . . . a Texas-based company."). The failure to plead that any specific conduct took place in, or was otherwise directed at, the forum state precludes this court's exercise of specific personal jurisdiction over Gorman as to any claims asserted. Accordingly, the court grants Gorman's motion to

dismiss for lack of personal jurisdiction.

## V

The court now considers whether it may exercise personal jurisdiction over Zang.

## A

Zang also contends that he has insufficient contacts with the forum state for the court to exercise of personal jurisdiction. He alleges that he has never traveled to Texas to conduct business with MPM and that his only connection to Texas is his electronic exchange of documents with MPM. Zang maintains that the allegations of injuries are insufficient to warrant the exercise of personal jurisdiction because the third-party complaint is silent as to where the alleged torts were committed. And, even if the allegations were true, he asserts that the acts must have been committed where he is located, not in Texas. Relying on *Walden v. Fiore*, Zang contends that the allegations are inadequate because all of his relevant conduct occurred outside of the forum state with those who had connections with the forum state. *See Walden*, 571 U.S. at 291 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

## B

### 1

MPM and RBC allege the same basis for the court's exercise of personal jurisdiction over Zang as they do for Gorman, with one additional factual allegation: that Zang signed the "Mutual Non-Disclosure Agreement" (the "Mutual NDA") governing the relationship

between Maiden and MPM. Despite this additional factual allegation, the court reaches the same conclusion: the allegations that Zang stole trade secrets and used them to poach an MPM client, and Zang's signature on the Mutual NDA, are alone insufficient to support the exercise of personal jurisdiction over Zang. Given the absence of facts pleaded to support general personal jurisdiction, the court focuses its analysis on whether Zang's signature on the Mutual NDA supports the exercise of specific personal jurisdiction.

2

The Fifth Circuit has "repeatedly held" that "the existence of a contract between the nonresident defendant and a resident of the forum [is] insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Valero Mktg. & Supply Co. v. Gen. Energy Corp.*, 702 F.Supp.2d 706, 716 (S.D. Tex. 2010) (Rosenthal, J.) (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004)). And although "[t]he case law recognizes that [in cases of intentional torts] an out-of-state party's communications [or contract] with a party in the forum state can provide a sufficient basis for specific personal jurisdiction," these cases are limited to circumstances in which "the content of the communications has a direct connection to the causes of action asserted." *Orix Pub. Fin., LLC v. Lake Cty. Hous. & Redevelopment Auth.*, 2011 WL 3628958, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (quoting *Barney F. Kogen & Co. v. Tred Avon Assocs. Ltd.*, 393 F.Supp.2d 519, 523-24 (S.D. Tex. 2005) (Rosenthal, J.)).

In this case, MPM and RBC have neither pleaded that Zang engaged in any

communications relating to the formation of the Mutual NDA nor have alleged that the agreement itself was tortious or fraudulent. They do not, for example, assert that Zang made any telephone calls or sent emails with representations relating to the purposes of the agreement or otherwise made statements to induce MPM to sign the Mutual NDA for the purpose of obtaining its trade secrets.[3] *Cf., e.g., Gazian v. Wells Fargo Bank,* 2013 WL 3290915, at *4 (N.D. Tex. June 28, 2013) (O'Connor, J.) (holding that court had personal jurisdiction over signatory to agreement where "in an effort to induce Plaintiffs' participation, [he] personally assured them, via telephone call to Plaintiffs' Dallas office, that the initial transaction was legitimate"). MPM and RBC merely plead that Zang signed the Mutual NDA with MPM. This bare allegation is insufficient to support the exercise of personal jurisdiction "in the absence of an alleged intentional tort committed via the *contents*" of the agreement itself or the communications forming the agreement. *Orix Pub. Fin.*, *LLC*, 2011 WL 3628958, at *6 (citing *Harch Hyperbarics, Inc. v. Martinucci*, 2010 WL 3398884, at *4 (E.D. La. Aug. 20, 2010)). Because Zang's signature on the Mutual NDA is insufficient to establish minimum contacts to support personal jurisdiction, the court grants his motion as to the intentional tort claims.

---

[3]MPM and RBC do assert that "defendants" failed to disclose the alleged poaching to "induce MPM into entering a contract which MPM would otherwise not have entered into." 2d Am. Ans. 21. But these assertions relate to the formation of the supply agreement, not the Mutual NDA, which is the only agreement that MPM and RBC allege that Zang signed.

Although the mere existence of a contract cannot confer personal jurisdiction over a party, personal jurisdiction over a party to an agreement may proper where the contract contemplates performance in the forum state. *See Orix Pub. Fin., LLC*, 2011 WL 3628958 at *6-7 (quoting *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992)) ("[T]he Fifth Circuit 'has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts.'"). But here, MPM and RBC have pleaded no facts relating to the Mutual NDA, beyond its existence. They have not alleged the location in which the agreement was signed, whether Texas law governs the agreement, or the duration of the parties' relationship as dictated by the agreement. Because MPM and RBC do not allege that Zang engaged in any activity in Texas, and because they provide no facts relating to the agreement itself, the court concludes that personal jurisdiction over Zang is improper as to all other claims asserted by MPM and RBC. For this reason, the court grants Zang's motion to dismiss.

## VI

The court turns now to the request of MPM and RBC for leave to amend.

### A

"When a party moves to amend his complaint, he must do so in a procedurally proper manner by complying with applicable rules of procedure." *Lefevre v. Connextions, Inc.*, 2014 WL 1390861, at *2 (N.D. Tex. Apr. 10, 2014) (Fitzwater, C.J.) (quoting *Tealer v.*

*Martinez*, 2005 WL 1214707, at *1 (N.D. Tex. May 23, 2005) (Ramirez, J.)).  Under Rule 15(a), a party may amend its pleading once as a matter of course within 21 days after serving it, but where "the deadline for seeking leave to amend pleadings has expired, [MPM and RBC] must satisfy the good cause standard of Rule 16(b)(4) before the court addresses the more liberal amendment standard of Rule 15(a)(2)."  *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2010 WL 1062566, at *2 (N.D. Tex. Mar. 19, 2010) (Fitzwater, C.J.) (footnote omitted).  But "[w]hen a party files an untimely motion for leave to amend and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone."  *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.).

B

MPM and RBC filed their July 22, 2019 second amended counterclaim and amended third-party complaint well after the 21 days allotted for amendment as a matter of course under Rule 15(a) and well past the April 30, 2019 deadline for seeking leave to amend pleadings under the amended scheduling order.  For this reason, Rule 16(b)(4) controls.  Because MPM and RBC solely address Rule 15(a) in their request for leave to amend and fail to mention of Rule 16(b)(4) or good cause, the court "denies the [request to amend] for that reason alone."  *Id.*

*   *   *

For the reasons explained, the court grants the July 1 and July 3 motions to dismiss

of Zang and Gorman, and it denies the request of MPM and Zang for leave to amend.[4]

**SO ORDERED**.

November 14, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[4]The motions to dismiss of Gorman and Zang filed on August 5, 2019 are denied
without prejudice as moot.