IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MAIDEN BIOSCIENCES, INC., § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:18-CV-1354-D |
| VS. § | |
| § | |
| MPM MEDICAL INC., et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Maiden Biosciences, Inc. ("Maiden") applies pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2019)—the Texas turnover statute—to compel intervenors HWH World, Inc. ("HWH") and Decentralized Sharing Systems, Inc. ("Decentralized") to turn over various assets that they allegedly acquired from the defendants in this case in a fraudulent scheme to help defendants avoid creditors. The court denies the application because the court lacks the authority to decide a substantive issue (whether intervenors' claims to ownership of the assets are invalid) that must be resolved in order to grant the relief Maiden requests.

I

In 2017 Maiden sued defendants MPM Medical Inc., n/k/a Crown Medical Products, Inc. ("Crown") and RBC Life Sciences, Inc. ("RBC") (collectively, "defendants" or the "Judgment Debtors") for breach of contract and unjust enrichment.

In October 2019 RBC entered into a secured convertible note with Decentralized in

the amount of $200,000 (the "First Note"). The First Note was secured by a security agreement and a guaranty made by RBC Life Sciences USA, Inc. ("RBC USA"), a wholly owned subsidiary of RBC. The security agreement granted Decentralized a security interest in all of RBC's and RBC USA's assets and personal property, including intellectual property, now or hereafter existing. Decentralized filed an amended UCC financing statement in October 2019.

In November 2019 RBC entered into a secured revolving convertible note with HWH[1] in the amount of $800,000 (the "Second Note"). The Second Note was secured by a security agreement and a guaranty made by certain RBC subsidiaries (the "RBC Subsidiaries"). Like the first security agreement, the second security agreement granted HWH a security interest in all of RBC's and the RBC Subsidiaries' assets and personal property, including intellectual property, now or hereafter existing. HWH filed a UCC financing statement in November 2019.

In December 2019 the Judgment Debtors filed an unopposed motion to withdraw their answers and counterclaim and to permit their counsel to withdraw. The court granted the motion on the same day.

In January 2020 Decentralized notified RBC USA that it was in default on its obligations as guarantor of the First Note. Decentralized proposed to grant RBC USA a credit against the First Note in the amount of $115,000 in exchange for collateral. In

---

[1] At that time, HWH was known as Bliss International, Inc.

February 2020 RBC USA accepted Decentralized's proposal. Pursuant to this acceptance of collateral, Decentralized purports to rightfully own all of RBC USA's assets. Decentralized does not, however, claim stock ownership in RBC USA.

In February 2020 HWH notified RBC and the RBC Subsidiaries that they were in default on their obligations under the Second Note. HWH proposed to grant RBC and the RBC Subsidiaries a credit against the Second Note in the amount of $100,000 in exchange for collateral. In March 2020 RBC and the RBC Subsidiaries accepted HWH's proposal. On the same day, Blue Elephant Financing LLC, then a secured creditor of RBC, objected to this acceptance of collateral, so HWH conducted a public foreclosure sale. HWH contends that it acquired essentially all of RBC's assets[2] in exchange for providing RBC a $150,000 credit against the Second Note at the foreclosure sale in April 2020.

On March 2, 2020 this court entered a final default judgment against the Judgment Debtors.[3] Maiden then commenced efforts to collect the judgment.

In June 2020 the court granted Maiden's first application for turnover relief (the "First Turnover Order") and appointed a receiver ("Receiver").[4] The First Turnover Order

---

[2]HWH does not claim stock ownership in certain subsidiaries (RBC USA, Crown, PT Arbici Indonesia, and RBC Life Asia Pacific Corporation).

[3]The judgment imposed joint and several liability on the Judgment Debtors in the principal sum of $4,329,000, together with prejudgment interest at the rate of 5.00% per annum, attorney's fees and costs in the sum of $80,109.50, and post-judgment interest at the maximum allowable rate.

[4]The court granted the application for the First Turnover Order after no response was filed. Neither the Judgment Debtors nor intervenors have sought relief from, or reconsideration of, that order.

instructed RBC, *inter alia*, to take all measures reasonably necessary to effectuate the transfer, conveyance, and turnover of the patent and trademarks that it owns. A few months later, the court granted Maiden's supplemental application for turnover relief. This supplemental order granted the Receiver the authority to execute an assignment and all other documents reasonably necessary to effectuate the transfer, conveyance, assignment, and turnover of the intellectual property.

In September 2020 the court granted Maiden's second application for turnover relief (the "Second Turnover Order"). The Second Turnover Order, *inter alia*, instructed RBC to effectuate the transfer, conveyance, assignment, and turnover of its subsidiary RBC USA to Receiver.

In October 2020 Maiden filed a third application for turnover relief (the "Third Application"). The Third Application asked the court to (1) order RBC to turn over its shares, stocks, and ownership interests in Arlington Laboratories, Inc., a wholly owned subsidiary of RBC; (2) order RBC to turn over all assets identified as collateral in the security agreements; (3) order RBC and Crown to turn over all documents related to their nonexempt property; (4) order intervenors not to interfere with property in the Receiver's control or otherwise subject to the order; (5) grant Maiden reasonable attorney's fees and costs associated with the Third Application; and (6) grant Maiden any other relief that it was justly entitled to receive.

While the Third Application was pending, intervenors filed on November 2, 2020 a motion to intervene, seeking to protect their purported assets. On November 17, 2020—like

- 4 -

the prior applications, in the absence of a response—the court granted Maiden's Third Application (the "Third Turnover Order"). On December 7, 2020 the court then granted intervenors' motion to intervene, but it denied their request to file a response to Maiden's already-granted Third Application, without prejudice to intervenors' seeking other available relief. On the same day, intervenors filed a motion for relief from the Third Turnover Order, or, alternatively, for reconsideration. After expedited briefing, the court granted intervenors' motion for relief and vacated the Third Turnover Order, concluding, at a minimum, that intervenors had not been afforded due process before the court granted Maiden's Third Application. The court advised the parties that it would consider Maiden's Third Application anew, and it permitted the parties to submit supplemental briefs.

In December 2020 Maiden filed the instant supplemental third application for turnover relief ("Supplemental Third Application") that revised the relief Maiden seeks.[5] In its Supplemental Third Application, Maiden requests that the court (1) order intervenors to turn over all assets identified as collateral in the security agreements; (2) order intervenors to turn over all documents related to the assets identified in the security agreements; (3) grant Maiden reasonable attorney's fees and costs associated with the Supplemental Third Application; and (4) grant Maiden any other relief that it is justly entitled to receive. Intervenors oppose the turnover relief that Maiden seeks.

---

[5]Because intervenors do not object to Maiden's revising the relief that it seeks and have responded to Maiden's revised requests, the court will consider whether Maiden is entitled to the relief it seeks in the Supplemental Third Application.

II

"The Texas Turnover Statute is a procedural mechanism that gives Texas courts the power to satisfy a judgment by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary legal process." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006) (citing *In re Hamel*, 180 S.W.3d 226, 228-29 (Tex. App. 2005, orig. proceeding)). "To obtain relief under the turnover statute, a judgment creditor must prove: (1) the judgment debtor owns property, including present or future rights to property; (2) the property is not exempt from attachment, execution, or seizure; and (3) the property 'cannot readily be attached or levied on or by ordinary legal process.'" *Black v. Shor*, 443 S.W.3d 170, 175 (Tex. App. 2013, no pet.) (quoting § 31.002).

"[T]he turnover statute is a purely procedural mechanism, and it is black-letter Texas law that proceedings pursuant to the turnover statute may not be used to determine the substantive property rights of the judgment debtors or of third parties." *Bollore*, 448 F.3d at 323 (citing *Maiz v. Virani*, 311 F.3d 334, 343-45 (5th Cir. 2002)). "[T]he purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control." *Resolution Tr. Corp. v. Smith*, 53 F.3d 72, 77 (5th Cir. 1995) (quoting *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991)).

- 6 -

III

To establish its right to relief, Maiden must prove that the Judgment Debtors own the property at issue. *See Black*, 443 S.W.3d at 175 (quoting § 31.002).

A

Maiden contends that the Judgment Debtors own the assets identified as collateral in the security agreements despite intervenors' possession of the assets. In support of this assertion, Maiden maintains that intervenors did not provide the Judgment Debtors value in exchange for their security interests and that therefore intervenors' interests in the collateral are invalid. According to Maiden, the Judgment Debtors and intervenors entered into the security agreements to fraudulently prevent creditors from obtaining the assets. Maiden also posits that intervenors cannot prove that they own the intellectual property at issue because they never received the necessary documents from the Judgment Debtors to effectuate the transfer.

Intervenors respond that Maiden's Supplemental Third Application should be denied as a matter of law for two reasons. First, intervenors maintain that Texas courts do not apply the turnover statute to non-judgment debtors, such as intervenors. Intervenors concede that some courts apply a limited exception to this rule when a non-judgment debtor possesses property that a judgment debtor owns or controls. But intervenors contend that the evidence does not support Maiden's contention that the Judgment Debtors, rather than intervenors, own the property at issue. Second, intervenors contend that relief should be denied as a matter of law on the ground that the Texas turnover statute is not available as a vehicle to

- 7 -

decide substantive disputes over property rights.

B

The question whether the Judgment Debtors own the property at issue requires a substantive determination of disputed property rights—i.e., whether intervenors failed to provide the Judgment Debtors value for their security interests and therefore do not have valid ownership claims to the property at issue. But as noted above, the turnover statute is a "purely procedural mechanism, and it is black-letter Texas law that proceedings pursuant to the turnover statute may not be used to determine the substantive property rights of the judgment debtors or of third parties." *Bollore*, 448 F.3d at 323 (citing *Maiz*, 311 F.3d at 343-45); *see also Smith*, 53 F.3d at 80 ("A proceeding to determine whether a transaction is fraudulent or otherwise to determine property rights of the parties is improper under the turnover statute."); *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 585 (Tex. 2018) (per curiam) ("Although some opinions view intervention as a proper method for a third party to protect its rights in a turnover proceeding, none go as far as holding that intervention enables a court to adjudicate third-party rights in what is otherwise a purely procedural device."). Because the property at issue in the Supplemental Third Application is subject to a substantive dispute concerning its ownership, the court cannot grant the relief that Maiden requests.[6] The substantive questions concerning

---

[6]Because the court concludes that, in a turnover proceeding, it cannot resolve the substantive ownership issues necessary to determine whether turnover relief should be granted, it need not reach the parties' remaining arguments.

- 8 -

the property rights at issue "must be separately adjudicated before a turnover application can be entertained." *Brupbacher v. Raneri*, 2000 WL 665560, at *4 (N.D. Tex. Mar. 17, 2000) (Fitzwater, J.).[7]

\* \* \*

For the reasons explained, the court denies Maiden's Supplemental Third Application for turnover relief.

**SO ORDERED**.

March 18, 2021.

```
                                    _____
                                    SIDNEY A. FITZWATER
                                    SENIOR JUDGE
```

---

[7]In intervenors' complaint in intervention, they seek a declaratory judgment regarding the property at issue.